## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELLVINA CHARLIE and ERON PADZEINNY,
Individually and As Co-Personal Representatives
of the Estate of MARANDA ZONDRA PADZEINNY,
Deceased Infant,

        Plaintiffs,

vs.                                       No. CIV-02-1491 JB/KBM

UNITED STATES OF AMERICA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Plaintiffs' Motion to Compel Responses to Their First Requests for Production, filed December 22, 2003 (Doc. 22). The Court held a hearing on the motion on January 20, 2004. The primary issue is whether the Court should compel the United States to produce documents that the government generated in connection with this claim as part of an internal review process. Because the Court finds that there is a possibility that the requested documents may be discoverable, it will require the United States to produce a privilege log of withheld documents and produce all withheld documents to the Court for an *in camera* review.

## BACKGROUND

This is a wrongful death case arising from the death of Maranda Z. Padzeinny, an infant. Her parents, Plaintiffs Ellvina Charlie and Eron Padzeinny, took their daughter to the Indian Hospital Services' emergency room in Crownpoint, New Mexico on the evening of April 29, 2001 at some

time after 10:00 or 10:30 p.m. when Eron was off work.  <u>See</u> Deposition of Eron Padzeinny at 11:11-14 (taken December 10, 2003).  The parents were concerned because Maranda had been running a fever and was coughing.  Maranda had been playing with her siblings and walking in her walker earlier in the evening.  She seemed normal to her parents.  <u>See</u> Deposition of Ellvina Charlie at 17:2-7 (taken December 10, 2003); Padzeinney Depo. at 16:20 to 17:1.

Although entry to the hospital was through the emergency room at that time of evening, Maranda was checked in at the clinic area of the hospital as a non-emergency patient early in the morning of April 30, 2001.  <u>See</u> Charlie Depo. at 21:18-24; Medical Records Number L65.  The physician on duty, Dr. David Bell, examined Maranda for approximately ½ hour and released her to her home shortly after midnight on April 30, 2001, prescribing that she take Motrin for the fever.  <u>See</u> Charlie Depo. at 32:21-23.

Ellvina Charlie put Maranda to bed and checked on her at 5:00 a.m. that day.  Maranda was "cooing," "playing," "happy," not irritable, and did not appear to have a fever.  <u>Id.</u> at 34:5-25.  She drank a bottle and went back to sleep.  <u>See id.</u>  Later that morning, Ellvina Charlie found Maranda unresponsive in her crib.  <u>See</u> Padzeinny Depo. at 31:8 to 32:25; Medical Record Number L70.  An ambulance took Maranda to the hospital.  <u>See</u> Padzeinny Depo. at 31:8 to 32:25; Medical Record Number L70.  An effort to resuscitate Maranda was unsuccessful.  <u>See</u> Padzeinny Depo. at 31:8 to 32:25.

An Initial Pre-Trial Report ("IPTR"), approved by the Honorable Karen Molzen, United States Magistrate Judge, and the Honorable William P. Johnson, United States District Judge, set Case Management Deadlines in this case.  <u>See</u> IPTR at 5 - 6, filed July 30, 2003 (Doc. 13).

Discovery opened on July 30, 2003.  The Court initially set discovery to end on December 5, 2003, but an unopposed motion and order signed by Judge Molzen extended the deadline by two weeks to December 19, 2003.  <u>See</u> Order Granting Unopposed Motion to Extend Discovery Deadlines, filed November 6, 2003 (Doc. 19).  The IPTR stated that the Court shall consider discovery timely if it is completed on or before the deadline set.  <u>See</u> IPTR at 5.

The Plaintiffs took Dr. Bell's deposition on November 19, 2003.  During the deposition, the Plaintiffs learned that the Government had generated documents as part of an internal review process of Maranda's death and of the treatment she received at the IHS facility.  The Plaintiffs' counsel elicited the following response from Bell at his deposition:

> A. Okay.  There was no special peer review for the specific event.  But it is a special thing where on a quarterly basis we review any cases, whether they were dramatic events such as this or other questions about care given and things like that, sort of the standard quality of care issues.

Deposition of Dr. Bell at 85:7-13 (taken November 19, 2003).  Bell identified the participants in the process:

> Q.  Okay, who participated in the peer review process that you can recall?
>
> (Objection raised.)
>
> Q.  Go ahead, Doctor.
>
> A.  The physicians at Crown Point provided the -
>
> Q.  Can you by name tell me who you specifically remember participating in the process?
>
> A.  It would be the medical staff.

<u>Id.</u> at 84:16 to 85:1.

-3-

The Plaintiffs served, by facsimile transmission and by mail, a First Request for Production of these documents and for other information on November 19, 2003. <u>See</u> Certificate of Service, filed December 5, 2003 (Doc. 20). Even without mailing time as allowed by rule 6(e) of the Federal Rules of Civil Procedure, their requests were untimely. The United States led off its Responses to the Requests for Production as follows:

> Defendant United States of America objects to Plaintiffs' Request for Production as it fails to comply with the Federal Rules of Evidence and the Initial Pre-Trial Report, which consider the requests timely if due before the deadline for discovery. In this case discovery was extended to December 19, 2003. Plaintiffs mailed and faxed their requests on November 19, 2003. No agreement is in place to allow service by fax in this case. Therefore, Plaintiffs' Request for Production is untimely. Notwithstanding this Objection Defendant responds to Plaintiffs as follows . . . .

Notwithstanding the untimeliness of Plaintiffs' Requests, the United States proceeded to respond to each of the seven Requests and had provided the requested information, attached additional information, or provided an opportunity for the Plaintiffs to review original documents. The request at issue in this motion is Plaintiff's Request No. 4, which requested "[t]he original of all documents generated by the Defendant, its agents and employees, which contain any information regarding any peer review or sentinel event review proceedings which were conducted in connection with the treatment and death of Maranda Padzienny in April, 2001." Plaintiff's First Request for Production, Request No. 4.

The United States has objected to providing the information requested, asserting that these materials are peer review documents:

> RESPONSE: The documents requested are clearly internal documents subject to a self-critical analysis privilege. The requested documents cover investigations and memoranda prepared after the incident which is the subject of this lawsuit. The self-

critical analysis privilege was created to protect physician peer review materials and is "based upon the policy consideration of encouraging entities to engage in honest self-evaluation in order to ensure compliance with the law or professional standards." The privilege has been repeatedly recognized in the context of morbidity and mortality conferences conducted by physicians.  Weekoty v. United States, 30 F. Supp. 2d 1343, 1345 (D.N.M. 1998) and cases cited by Judge Leroy Hansen therein.

The documents requested in this request are subject to the self-critical analysis privilege.  Mr. Lyle questioned Dr. Bell at deposition who testified that the case was reviewed as part of a peer review process.  As such, even if Plaintiffs' request had been timely, Defendant objects to production of such documentation.

Defendant United States of America's Responses to Plaintiffs' First Request for Production, Request No. 4.  The United States did not provide a privilege log, as rule 26(b)(5) of the Federal Rules of Civil Procedure requires.  The Plaintiffs acknowledge, however, that the documents are likely peer review materials subject to the privilege discussed in Weekoty v. United States, 30 F. Supp. 2d 1343 (D.N.M. 1998).

## LEGAL ANALYSIS

### I.   THE PLAINTIFFS' REQUESTS FOR PRODUCTION ARE TIMELY.

The United States agrees that a privilege log would be appropriate if the Request had been timely.  The United States argues, however, that the Request was not timely and that the proper response was to deny the request for a privilege log.

The United States argues that the Plaintiffs' representations that they only learned of the existence of the internal review process during Bell's deposition of November 19, 2003 are disingenuous, because their counsel have extensive experience in medical malpractice.  Plaintiffs' counsel, James Lyle and Turner Branch, are well-seasoned and respected medical malpractice attorneys.  Lyle is experienced in and advertises as an attorney with knowledge of medical issues.

This case involves the unfortunate sudden death of a 9 month old child.  The United States contends that such experienced counsel as the Plaintiffs' attorneys should have anticipated both internal peer review, as well as forensic review.  The United States maintains that this attempt to obtain this information was an afterthought and too late.  The United States argues that case management deadlines in federal court are not mere suggestions and that the Court should strictly enforce the same.

The Court agrees that the discovery deadline in this matter, like all case management deadlines, is not a suggestion.  One underlying purpose of all case management deadlines, however, is to aid in the discovery of the truth.  Under the circumstances of this case, the Court finds that it was reasonable for Plaintiffs' counsel to send the discovery requests regarding the internal review process immediately after concluding Bell's deposition.  Accordingly, the Court will consider the merits of Plaintiffs' motion to compel.

## II. THE PARTIES AGREE THAT THE QUALIFIED "SELF-CRITICAL ANALYSIS PRIVILEGE" APPLIES TO THE DOCUMENTS AT ISSUE.

Judge Hansen held in Weekoty v.United States that the self-critical analysis privilege would be recognized in the context of mortality and morbidity conferences.  See 30 F. Supp. 2d at 1345.  Judge Hansen found:

> Recognition of this privilege in the medical setting is supported by the same policy considerations and Rule 501 analysis as the United States Supreme Court relied upon in Jaffee v. Redmond, when it recognized the psychotherapist-patient privilege. [See] 518 U.S. at 15.  In Jaffee, the Supreme Court observed that the psychotherapist-patient privilege, like the attorney-client and spousal privileges, is rooted in the imperative need for confidence and trust which promotes frank and complete disclosures.  Similarly, applying the self-critical analysis privilege in this case will ensure the same level of confidence and trust which will promote the type of . .

. open discussions necessary to accurately analyze medical procedures and decisions so that errors may be corrected and patient care can be improved.  Just as the Court recognized in Jaffee, the mere possibility of disclosure would undermine this necessarily open and unconstrained self examination.  Moreover, the public interest served by protecting medical peer review conferences from disclosure is perhaps greater than that served by the individual based spousal, attorney- client, and psychotherapist-patient privileges. A single conference in this context promotes knowledge and understanding among numerous physicians about life saving techniques and potentially life threatening decisions.  Thus[,] the public good is multiplied far beyond an individual patient's care, as the information promotes more effective patient care throughout a hospital.

Weekoty v.United States, 30 F. Supp. 2d at 1346 (internal quotation marks and citations omitted).

The United States argues that eliminating such a privilege would have a chilling effect on the medical community to meet and candidly explore the problems encountered in cases and to openly deal with remedies for such issues.

The privilege recognized in Weekoty v. United States is a qualified, not absolute, privilege. See id.  Additionally, Judge Hansen in Weekoty recognized the privilege as "supported by New Mexico's own statutory privilege."  Id. at 1347 (citing 1978 N.M.S.A. § 41-9-5 (precluding any party from using the confidential records of medical peer review proceedings in civil litigation)).  Judge Hansen also noted that "out of comity, it is incumbent upon this Court to consider the New Mexico legislature's conclusion that the public interest in confidential morbidity and mortality conferences outweighs the interest of a single party to discovery of those discussions."  Id.

The Plaintiffs do not ask the Court to reconsider the privilege recognized in Weekoty or argue that the privilege does not apply.  Rather, the Plaintiffs assert that the bounds of this qualified privilege are those which currently exist under New Mexico law; the United States does not dispute the Plaintiffs' assertion.  A party asserting the privilege must produce the allegedly privileged items

-7-

for *in camera* inspection by the Court.  It is the burden of the party resisting discovery to satisfy the Court that "the data or information was generated exclusively for peer review and for no other purpose, and that opinions were formed exclusively as a result of peer review deliberations." Southwest Community Health Services v. Smith, 107 N.M. 196, 200, 755 P.2d 40, 44 (1988).

If the trial court determines that "the evidence was neither generated nor formed exclusively for or as a result of peer review, it shall not be immune from discovery unless it is shown to be otherwise available by the exercise of reasonable diligence." Id.  If the Court determines, after an evidentiary hearing and an *in camera* inspection, that the information is confidential under the requirements in § 41-9-5, the Court may still order disclosure of the information if it determines "that the success or failure of a litigant's cause of action or defense would likely turn on the evidence . . . ." Id., 107 N.M. at 201, 755 P.2d at 45.

**IT IS THEREFORE ORDERED** that the Plaintiffs' Motion to Compel Responses to their First Requests for Production is granted.  Within thirty days of the hearing, the United States shall provide the Court and opposing counsel with a privilege log, identifying, as rule 26(b)(5) requires, the documents as to which it is asserting the peer review privilege.  Additionally, the United States will submit the documents for *in camera* review within thirty days of the hearing on the motion, so that the Court can determine whether the documents are privileged and, if so, whether the Court should set aside the qualified privilege which attaches to any of these documents because they contain information which is key to the success or failure of the Plaintiffs' claims.  The Court will give the United States an opportunity to briefly comment, by letter or by short memorandum, on the Court's proposed order, if any, before ordering the United States to produce any documents to which the

qualified privilege has been set aside.  The United States should also serve opposing counsel with a copy of any letter or memorandum.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

James P. Lyle
Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico


Turner W. Branch
Margaret Moses Branch
The Branch Law Firm
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*


David C. Iglesias
  United States Attorney
Virgil H. Lewis II
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Defendant*